IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2003

## STACEY F. BALDON v. STATE OF TENNESSEE

**Appeal from the Circuit for Lauderdale County**
**No. 6755      Joseph H. Walker, Judge**

---

**No. W2003-00763-CCA-R3-PC  - Filed January 21, 2004**

---

The petitioner, Stacey Baldon, appeals from the trial court's denial of post-conviction relief. The issues presented for review are whether the petitioner was denied the effective assistance of counsel and whether the guilty pleas were knowingly and voluntarily entered. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, Stacey Baldon.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 19, 1999, officers from the Lauderdale County Sheriff's Department set up a purchase of cocaine at the defendant's residence. Two days later, a search warrant executed at the residence yielded a small bag of cocaine, a large bag which contained several smaller bags of cocaine, a single piece of crack cocaine, $902 in cash, a razor blade and a box cutter with cocaine residue, other small pieces of cocaine, and a .25 caliber pistol. The total weight of the cocaine was 2.2 grams. Later, the defendant was convicted by a jury of possession of .5 grams or more of cocaine with intent to deliver, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor. The defendant pled guilty to possession of a firearm, a Class E felony. The trial court imposed a Range II sentence of 12 years for the Class B felony, to be served concurrently with the sentence of two years for the Class E felony, and 11 months and 29 days for the misdemeanor. This court affirmed on direct appeal. State v. Stacey Philander Baldon, No. W2000-00524-CCA-R3-CD (Tenn. Crim. App., at Jackson, Feb. 12, 2001). Application for permission to appeal was denied on June 4, 2001.

On December 18, 2001, the petitioner filed a petition for post-conviction relief alleging, among other things, that he had been denied the effective assistance of counsel. The petitioner was appointed counsel who filed an amended petition. In the amended petition, the petitioner alleged that his counsel had failed to adequately investigate the facts and named several witnesses that would have supported the defense theory at trial that the petitioner had neither actual nor constructive possession of the controlled substances or the pistol. The petitioner also asserted that his trial counsel had not permitted him to testify at trial as he desired and had also failed to provide adequate advice to the petitioner before he entered a guilty plea on the Class E felony charge.

At the evidentiary hearing, trial counsel, called as a witness for the petitioner, acknowledged that the petitioner had a co-defendant, Michael Davis, who had announced at the time of the search that he owned "whatever the police found." Trial counsel testified that she had investigated the scene of the crime, taking photographs, and interviewed the petitioner, his wife, his mother, his uncle, and his co-defendant. She also confirmed that during the course of the investigation, she had learned that a female by the nickname of "Bird" was at the residence of the petitioner at the time of the search. She testified that she had asked the petitioner to assist her in making contact with "Bird" and also another man whom the petitioner claimed had run from the residence at the time of the search. Trial counsel described the petitioner as evasive about the whereabouts of "Bird," who was described as a friend of Ms. Tonya Baldon, the petitioner's wife. She testified that the petitioner declined, when asked, to assist her in making contact with the woman. According to trial counsel, the petitioner's uncle, Gregory Bates, who was washing his car outside of the petitioner's residence at the time of the search, had confirmed prior to the trial that the petitioner was selling drugs out of his residence. It was her opinion that Bates, who stated that he would neither lie under oath nor risk going to prison in order to protect the petitioner, would provide damaging testimony if called as a defense witness. She explained that Bates, who had a lengthy criminal history, was unwilling to accept responsibility for the presence of the illegal drugs in the residence of the petitioner. Trial counsel acknowledged that the issuance of the search warrant was based upon a sale at the location that Bates had made to a confidential informant. Trial counsel testified that during her interview of Bates, he contended that the illegal drugs belonged to the petitioner. She was aware that Bates, who had prior convictions of aggravated robbery, forgery, and theft, and was on parole at the time of the charges made against the petitioner, was a credibility concern if called as a defense witness.

Trial counsel also contended that she did not prohibit the petitioner from testifying. While acknowledging that she had advised the petitioner not to do so, trial counsel asserted that the ultimate decision not to testify was entirely that of the petitioner. Trial counsel testified that the trial judge had ordered that the weapons charge be tried separately from the drug charges. She conceded that she had advised the petitioner to plead guilty to the gun charge, explaining that she believed that the trial court would be more lenient in sentencing. It was her opinion that the strategy was successful because the trial court chose to impose concurrent sentences.

Trial counsel also testified that she had received a favorable ruling on a motion in limine regarding the petitioner's prior criminal record but chose to recommend against his taking the stand for fear that the petitioner would likely "open the door" for references to his prior crimes. She

recalled that the petitioner's prior criminal history consisted of aiding and abetting a robbery, a jail escape, and two counts of robbery with a deadly weapon. Similarly, trial counsel acknowledged that she had expressed reservations about Ms. Baldon's testifying, fearing that she might commit perjury. Trial counsel explained that Ms. Baldon, who had claimed ownership of the gun, was ineffective as a witness in the preliminary hearing and unable to answer routine questions regarding the weapon. Trial counsel specifically recalled that Ms. Baldon was unable to say where she had acquired the weapon, how much it had cost, and why she had not informed police of her ownership between the time of the search and the time of trial.

Trial counsel testified that she did call the petitioner's father, Rufus Baldon, to testify that the petitioner had a legitimate job at the time of his arrest. According to trial counsel, Rufus Baldon also testified that the petitioner's job required the use of a box cutter, which had been seized as evidence during the search of the residence.

Belinda Hubbard, nicknamed "Bird," testified at the evidentiary hearing that she was present during the search of the petitioner's residence. Explaining that she had stopped at the residence to visit with Ms. Baldon, she claimed that she saw neither the petitioner nor his co-defendant in possession of any illegal drugs, drug paraphernalia, box cutters, or weapons during the five or ten minutes she had been there. Ms. Hubbard also contended that during the search she overheard the co-defendant, Davis, claim ownership of the cocaine found in the residence. It was her recollection that the police had directed the co-defendant to "shut up" because they did not think it was his. She testified that the police did not ask for her identification and allowed her to leave while executing the search warrant. Ms. Hubbard stated that she was never contacted by the petitioner's trial counsel about testifying. On cross-examination by the state, Ms. Hubbard acknowledged that she lived with her aunt at the time of the offense and did not have a listed address. Ms. Hubbard also conceded that she did not contact the petitioner prior to trial regarding either her identity or her availability as a witness.

Bates also testified at the evidentiary hearing. He claimed that the illegal drugs belonged to the petitioner's co-defendant, Michael Davis, who had taken the drugs into the residence. Bates testified that he did not remember having told trial counsel that the drugs belonged to the petitioner. Bates acknowledged that testifying at trial "would have been a great risk with my past record," explaining that he did not want to risk further incriminating himself.

Tonya Baldon, the petitioner's wife, testified that she left for work just prior to the search but had not seen the petitioner in possession of any illegal drugs or a weapon. Ms. Baldon, who testified at the preliminary hearing regarding ownership of the gun, stated that she was available as a witness at the trial but conceded that she did not know whether her testimony would have made a difference in the results.

The petitioner claimed that he wanted to testify at trial but that his trial counsel had discouraged him based upon his prior criminal record. While acknowledging that he had consented to plead guilty to the gun charge, the petitioner complained that his counsel had misadvised him.

-3-

The petitioner insisted that he had asked his trial counsel to call his wife, his co-defendant, Bates, and Ms. Hubbard as witnesses. He contended that he did not understand that he had a right to testify regardless of the advice of his counsel. On cross-examination, the petitioner acknowledged that he did not know where "Bird" lived and did not know her very well at all.

At the conclusion of the evidentiary hearing, the trial court entered detailed findings of fact and conclusions of law which can be summarized as follows:

1.      that the petitioner fully understood his right to testify and chose not to do so and that trial counsel was not ineffective as to that claim;
2.      that because of Bates's parole status at the time of the trial and his desire not to incriminate himself by admitting that he had participated in the sale of drugs, it was not ineffective assistance of counsel when he was not called as a witness;
3.      that counsel was not ineffective for failing to call Belinda Hubbard, who had been at the residence only a few minutes when the police arrived to make the search because the extent of her knowledge was Davis's claim of ownership of the drugs, a fact made known to the jury at trial;
4.      that because Ms. Baldon was absent at the time of the search, claimed to be unaware of the presence of any drugs, and could assist only as to the gun charge, trial counsel was not ineffective for having failed to call her as a witness on the drug charges; and
5.      that the petitioner, who had a significant prior record, fully understood the significance and the consequences of his plea of guilt to the gun charge.

In this appeal, the petitioner cites two grounds for relief but argues only that trial counsel was ineffective. The state contends that trial counsel was not ineffective and asserts that the petitioner's failure to either argue or cite supporting authority for his claim of an involuntary plea to the firearm conviction has been waived. See Tenn. R. Crim. P. 10(b).

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 30 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

By its order denying relief, the trial court implicitly accredited the testimony of trial counsel and rejected the testimony offered by the petitioner and his witnesses. Our review of this record establishes that trial counsel had sound reasons for each and every tactic employed during the course of the trial. The petitioner's prior record, the status of Bates on parole, Ms. Baldon's lack of knowledge about the drug charges, and the lack of knowledge about Ms. Hubbard's name and address at the time of the trial, especially when combined with her relative lack of knowledge of the circumstances, required counsel to make strategic choices. By his own testimony, the petitioner acknowledged that there were reasons that he should not have testified on his own behalf. The aim of the defense was to place the blame on the co-defendant, Michael Davis, who claimed to the police during the search that he was the owner of the illegal drugs. That the defense failed is not a ground for relief. In summary, the evidence does not preponderate against the findings of the trial court. Finally, the record fully supports the trial court's conclusion that the pleas were knowingly and

voluntarily entered with an appreciation for the consequences.  Because of his prior criminal record, the petitioner had a familiarity with the criminal justice system.  His decision to enter the guilty plea to the firearm charge appears to have been a voluntary and intelligent choice given his alternatives.

Accordingly, the judgment is affirmed.

        _____

GARY R. WADE, PRESIDING JUDGE